**Harold T. WILSON, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 91–2183.

United States Court of Veterans Appeals.

May 12, 1993.

Kenneth M. Carpenter, Topeka, KS, on the brief, for appellant.

James A. Endicott, Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Carolyn F. Washington, Washington, DC, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and MANKIN and IVERS, Associate Judges.

IVERS, Associate Judge:

Harold T. Wilson appeals an August 15, 1991, decision of the Board of Veterans' Appeals (BVA or Board) granting entitlement to an effective date of May 9, 1989, for a permanent and total disability rating for pension purposes. *Harold T. Wilson,* BVA 91-____ (Aug. 15, 1991). The Court has jurisdiction of the case pursuant to 38 U.S.C.A. § 7252(a) (West 1991). For the reasons set forth below, the Court vacates the decision of the BVA and remands the case for readjudication consistent with this decision.

## FACTUAL BACKGROUND

Appellant served in the United States Air Force from January 20, 1966, to January 12, 1970. R. at 1–2. At some point (not apparent from the record), he was rated as 10%–disabled for a non-service-connected nervous condition, personality disorder, and 40%–disabled for a non-service-connected left below-knee amputation, for a combined disability rating of 50%. R. at 2. On March 26, 1981, he applied to a Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) to reopen a claim for permanent and total disability (PT) rating for non-service-connected pension purposes. *Ibid.* By an August 10, 1982, rating decision, the RO continued the denial of a PT rating. *Ibid.* Following a substantive appeal to the Board, the Board remanded the matter for further development on February 27, 1984. R. at 49–50. On August 8, 1985, the BVA continued the denial of a PT rating and denied service connection for pancreatitis and an acquired psychiatric disorder. R. at 73. On March 28, 1986, appellant resubmitted his claim for a non-service-connected

pension on the basis of his non-service-connected left below-knee amputation, chronic pancreatitis, and upper extreme neuropathy. R. at 82. In June 1987, the Board once again denied a PT rating. R. at 146.

On February 26, 1988, appellant resubmitted the claim for pension by filing a then current Income–Net Worth and Employment Statement with the RO. R. at 147–49. "As this evidence was new and material, the Board concedes that the claim was reopened." *Wilson,* BVA 91-____, at 3. Additional evidence was generated in connection with this claim. A September 13, 1988, report by Dr. David Beckley, a private chiropractor, indicated that appellant "should not work in or on heavy or dangerous equipment or in an environment which vibrates or at any heights over [one] foot." R. at 175. On September 23, 1988, appellant underwent a Medical Assessment of Ability to Do Work–Related Activities (Mental) and (Physical) at a VA medical center (MC). R. at 155–58. A VA physician also completed a Physician's Questionnaire for Anxiety Related Disorders, R. at 159–60, and a Physician's Questionnaire for Affective Disorders, R. at 161–62. On April 20, 1989, Dr. David Beckley provided a diagnosis:

I. Chronic cervicobrachial syndrome associated with paravertebral muscle spasms and myofascitis, radiculitis and paraesthesia radiating along the brachial nerve plexus into the right arm and hand complicated by reversal of the normal cervical lordotic curve from the level of C4 to C7 and cervical spondylosis.

II. Chronic lumbar posterior facet syndromes of L3 on L4, L4 on L5, and L5 on S1 associated with paravertebral muscle spasms, myofascitis and radiculitis radiating along the trajectory along the left sciatic nerve plexus into the left thigh complicated by disc degeneration at the L5/S1 level, amputation of the left leg below the knee joint and lumbar spondylosis.

R. at 164. The chiropractor also provided a prognosis:

Due to the nature of this condition and because of the findings upon examination and evaluation[,] the outlook for a complete uneventful recovery in the future is poor at this time.... Due to the structural weaknesses of the cervicodorsal and lumbosacral spine and neurological deficits manifested, it is apparent that the patient's symptoms are going to be recurrent. He can expect intermittent exacerbations of pain and stiffness with restriction of motion in the neck and lower back with radiation of pain into the right arm and hand and left leg. The patient can expect little resolution as his condition progresses along a chronic course with acute episodes of exacerbations of pain and symptoms directly proportional to his activities. The present symptoms and objective findings in my opinion are of a permanent nature. *I feel that Mr. Wilson's condition prevents him from obtaining any gainful employment.*

*Ibid.* (emphasis added).

Beginning on May 5, 1989, appellant underwent examinations for purposes of disability evaluation. R. at 178–87. A May 9, 1989, chemistry profile report indicated abnormally high glucose and triglycerides levels. R. at 181. An examination of the musculoskeletal system indicated tenderness to palpation of the tip of appellant's stump where his left leg had been amputated, full range of motion of the lumbosacral spine accompanied by pulling sensation at the extremes, full range of motion of the cervical spine accompanied by pulling sensation at the extremes and tenderness over the paraspinal muscles, and an unremarkable left arm. R. at 186.

On July 25, 1989, appellant was admitted to the Topeka, Kansas, VAMC for recurrent chronic pancreatitis, which was described as secondary to alcohol abuse. R. at 189. On October 13, 1989, a VA physician wrote in a progress note: "Frequent acute recurrences of Pancreatitis and an amputated leg make it impossible for him to work." R. at 193. A November 21, 1989, medical record indicates that appellant still had elevated blood sugars and was being considered for admission to a hospi-tal for insulin therapy. R. at 192. On January 5, 1990, he was admitted to the Topeka VAMC with a primary diagnosis of insulin-dependent diabetes mellitus and chronic pancreatitis.

On March 29, 1990, an administrative law judge (ALJ) with the Social Security Administration evaluated appellant for his disabilities. R. at 14–21. The ALJ found that appellant's "residual functional capacity for even 'sedentary' work has been so eroded by his chronic pancreatitis and his other medical conditions, that there are no jobs which the claimant could perform which exist in significant numbers in the local and national economies." R. at 20. Consequently, the ALJ decided that appellant "continues to be entitled to a period of disability and to disability insurance benefits" under the Social Security Act. *Ibid.*

On April 13, 1990, the RO granted a PT rating for pension purposes effective July 25, 1989, the date of appellant's admission to the Topeka VAMC with a diagnosis of recurrent alcohol-related pancreatitis. R. at 207–08. On September 20, 1990, appellant filed a Notice of Disagreement (NOD) over the effective date of his pension benefits. R. at 235. Appellant contended that the effective date of the award should have been March 1988, the month following his reopening of his claim. On August 15, 1991, the BVA adjusted the effective date of the award to May 9, 1989, the date when appellant had been found to have elevated blood sugar levels at the Topeka VAMC. *Wilson*, BVA 91-____, at 5.

## ANALYSIS

█ The issue, then, is whether appellant is entitled to an earlier effective date for the PT rating. Under 38 U.S.C.A. § 5110(a) (West 1991),

the effective date of an award based on an original claim, a claim reopened after final adjudication, or a claim for increase, of compensation, dependency and indemnity compensation, or pension, shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor.

For a reopened claim, the effective date of an evaluation and award of pension is the date of receipt of the claim or the date entitlement arose, whichever is *later*. 38 C.F.R. § 3.400(r) (1992). Appellant reopened his claim for pension on February 22, 1988. However, the Board found that the earliest date when entitlement could have arisen was the May 9, 1989, chemistry profile that showed elevated blood sugar levels. *Wilson*, BVA 91–___, at 5.

 Because the determination of when entitlement to a PT rating began is a finding of fact, the Court reviews the BVA's finding under the "clearly erroneous" standard of review. 38 U.S.C.A. § 7261(a)(4) (West 1991); *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990). Under the "clearly erroneous" standard of review, "if there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, [the Court] cannot overturn them." *Gilbert, supra.* The Board must base its decisions on "all evidence and material of record," 38 U.S.C.A. § 7104(a) (West 1991), and must provide a "written statement of [its] findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record," 38 U.S.C.A. § 7104(d)(1) (West 1991). *See Douglas v. Derwinski*, 2 Vet.App. 435, 438–39 (1992) (en banc); *Gilbert*, 1 Vet.App. at 56–57. Pursuant to these statutory requirements, the Board must "account for the evidence which it finds to be persuasive or unpersuasive," and provide reasons or bases for rejecting evidence submitted by or on behalf of the claimant. *Gilbert*, 1 Vet.App. at 57.

 In this instance, the Board did not adequately address the April 20, 1989, statement from Dr. Beckley, the private chiropractor, that appellant was prevented from any gainful employment. R. at 164. In its August 1991 decision, the Board stated:

> The evidence considered by the June 1989 rating decision consisting of examinations made prior to May 1989 was in-

sufficient for a finding of permanent and total disability. The veteran's primary disabilities prior to that time were his left below-knee amputation and paraspinal muscle strain of the cervical and lumbosacral spine.

*Wilson*, BVA 91–___, at 5. Dr. Beckley's statements indicate that, elevated blood sugar or diabetes aside, he considered the spinal disorder alone sufficient to preclude appellant from obtaining gainful employment. Although appellant did not then have a sufficient schedular disability rating for purposes of unemployability, *see* 38 C.F.R. § 4.17 (1992), Dr. Beckley's April 1989 statement was pertinent to the issue of whether appellant qualified for a PT rating for pension purposes on an extraschedular basis, *see* 38 C.F.R. § 3.321(b)(2) (1992). However, nowhere in its "REASONS OR BASES FOR DECISION" does the Board consider Dr. Beckley's statement regarding unemployability. On remand, the Board must provide adequate reasons or bases discussing this evidence.

 Appellant argues further that he should be entitled to an earlier effective date of award under 38 U.S.C.A. § 5110(b)(3)(A) (West 1991). However, in interpreting 38 U.S.C.A. § 5110(b)(3)(A), appellant misconstrues who qualifies for consideration under this section. Under this section,

> [t]he effective date of an award of disability pension to a veteran described in subparagraph (B) of this paragraph shall be the date of application or the date on which the veteran became permanently and totally disabled, if the veteran applies for a retroactive award within one year from such date, whichever is to the advantage of the veteran.

38 U.S.C.A. § 5110(b)(3)(A). Subparagraph (A) applies *only* to veterans who meet the criteria under subparagraph (B), and subparagraph (B) clearly states that a veteran must have been *"prevented by a disability* from applying for disability pension for a period of at least 30 days beginning on the date on which the veteran became permanently and totally disabled." 38 U.S.C.A. § 5110(b)(3)(B) (West 1991) (emphasis add-

ed). VA regulations also provide that "[w]hile rating board judgment must be applied to the facts and circumstances of each case, extensive hospitalization will generally qualify as sufficiently incapacitating to have prevented the filing of a claim." 38 C.F.R. § 3.400(b)(1)(ii)(B) (1992). Appellant does not argue that he was "prevented by a disability" from applying for pension. Nor does he argue that he was hospitalized so extensively that he was prevented from applying for pension. *See* 38 C.F.R. § 3.400(b)(1)(ii)(B). Rather, appellant argues that he qualifies for the more advantageous effective date of award under subparagraph (A) because he "applied for a retroactive award within one year from the date in which he became permanently and totally disabled pursuant to 38 U.S.C.[A.] § 5110(b)(3)(A)." Br. at 31. This construction of subparagraph (A) is too broad and inclusive and disregards the limitations of subparagraph (B). Therefore, appellant's argument under subparagraph (A) must fail.

Appellant also argues that this Court must set aside the BVA's 1985 and 1987 decisions because of clear and unmistakable error. Br. at 36–43. However, appellant raises the "clear and unmistakable error" argument for the first time in this Court. A claimant seeking to appeal an issue to the Court must first obtain a *final* BVA decision on that issue. *See* 38 U.S.C.A. §§ 7266(a), 7252(a) (West 1991). "Review in the Court shall be on the record of proceedings before the Secretary and the Board." 38 U.S.C.A. § 7252(b) (West 1991). In this case, the veteran has apparently never before submitted the issue of "clear and unmistakable error" to the BVA. *See Russell v. Principi*, 3 Vet.App. 310, 315 (1992) ("clear and unmistakable error" issue must have been adjudicated by the BVA first before the Court may review the issue). Thus, he has not pursued this issue before the administrative agency, and the Court will not preempt the BVA and address the merits of this claim. *See Herzog v. Derwinski*, 2 Vet.App. 502, 503 (1992); *Branham v. Derwinski*, 1 Vet.App. 93, 94 (1990); *Mokal v. Derwinski*, 1 Vet. App. 12, 15 (1990).

Under the guise of a "clear and unmistakable error" argument, appellant would have this Court review the final 1985 and 1987 BVA decisions even though the Court lacks the statutory grant of jurisdictional authority to review those decisions in the first instance. *See Russell, supra* (it would be inconsistent with Court's jurisdiction for it to conduct a "full review" of previous decisions over which it does not have plenary jurisdiction). Appellant could not have filed an NOD that could have conferred jurisdiction upon the Court with respect to either the August 1985 or the June 1987 BVA decision. *See* Veterans' Judicial Review Act, Pub.L. No. 100–687, § 402 (1988) (found at 38 U.S.C.A. § 7251 note (West 1991)) (Court does not have jurisdiction unless an appellant has filed a valid NOD on or after November 18, 1988); 38 U.S.C.A. § 7105(b)(1) (NOD must be "filed within one year from the date of mailing of notice of the result of the initial review or determination"); 38 C.F.R. § 20.-302 (1992); *Prenzler v. Derwinski*, 928 F.2d 392 (Fed.Cir.1991). Therefore, the Court cannot review the BVA's 1985 or 1987 decisions.

## CONCLUSION

For the reasons stated above, the Court AFFIRMS that part of the August 15, 1991, BVA decision as to appellant's rating, VACATES that part of the decision as to the effective date of the PT rating, and REMANDS that matter for readjudication consistent with this decision.