# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 97-1192

FRANK L. TETRO, III, APPELLANT,

V.

HERSHEL W. GOBER,
ACTING SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided  Sep 6, 2000)

*Ruth Tetro* (non-attorney representative), of Chinook, WA, was on the pleadings for the appellant.

*Leigh A. Bradley*, General Counsel; *Ron Garvin*, Assistant General Counsel; *Michael A. Leonard*, Deputy Assistant General Counsel; and *Adam K. Llewellyn*, all of Washington, D.C., were on the pleadings for the appellee.

Before KRAMER, IVERS, and GREENE, *Judges.*

IVERS, *Judge*, filed the opinion of the Court. KRAMER, *Judge*, filed an opinion concurring in part and dissenting in part.

IVERS, *Judge*:  The appellant, Frank L. Tetro, III, appeals a March 26, 1997, decision of the Board of Veterans' Appeals (BVA or Board) denying an effective date earlier than February 23, 1989, for an award of service connection for post-traumatic stress disorder (PTSD), granting special monthly pension based on the need for regular aid and attendance, and granting an effective date of April 26, 1991, for non-service-connected total and permanent disability pension.  Record (R.) at 6-13.  The appellant has filed a brief, the Secretary has filed a motion for summary affirmance in lieu of a brief, and the appellant has filed a motion in opposition to the Secretary's motion and a request for summary judgment, which the Court treats as a reply brief.  This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).

On April 4, 2000, the Court issued an opinion in this case, *Tetro v. West*, 13 Vet.App. 404

(2000), that affirmed in part, and vacated in part the Board's March 26, 1997 decision. The Secretary filed a motion for reconsideration and for full Court review, dated April 25, 2000, as to the Court's holding regarding the application of *Hayre v. West*, 188 F.3d 1327 (Fed. Cir. 1999), to the facts of this case. The Court will grant the Secretary's motion for reconsideration, withdraw its April 4, 2000 opinion, and issue this opinion in its stead. The Court further notes, that, by order dated April 17, 1998, the Court advised the appellant that the record on appeal (ROA) may not include materials not relevant to the issues on appeal. By order dated June 4, 1998, the Court advised the appellant that the Court is precluded from considering on appeal any material that was not in the record before the Board when it rendered its March 26, 1997, decision, and that documents that postdate the Board decision cannot be included in the ROA. By order dated July 7, 1998, the Court cautioned the appellant against attempting to supplement the ROA with documents not relevant to the issues of the effective date of his permanent and total disability for pension purposes and the effective date of his grant of service connection for PTSD. The appellant has supplemented both his brief and his reply brief with clippings, news articles, and other extraneous materials. The Secretary has moved to strike these documents. None of the extraneous material attached to the appellant's filings will be considered.

The appellant argues as follows: (1) that the Federal Government failed to provide documentation of his exposure to Agent Orange and biological and chemical warfare agents (Argument 1); (2) that VA failed to consider as a PTSD stressor his survival of a shipboard fire during service (Argument 2); (3) that a 1999 Board decision awarding a 100% disability rating for a service-connected closed head injury assigned an incorrect effective date (Argument 3); (4) that he is entitled to retroactive pension benefits pursuant to 38 C.F.R. § 3.151(b) (1999) (Argument 4); (5) that a 1990 Board decision denying entitlement to non-service-connected pension, a 1994 rating decision, and the 1997 Board decision that is the subject of this appeal contained clear and unmistakable error (CUE) (Argument 5); and (6) that the Board in 1990 failed in its duty to assist the appellant by failing to obtain Social Security Administration (SSA) records pertaining to a 1989 award of disability (Argument 6). In response, the Secretary argues merely that there was a plausible basis in the record for the effective date for the appellant's non-service-connected pension award as determined by the Board. For the following reasons, the Court rejects Arguments 1 through 6.

2

## I. BACKGROUND

Only those facts in the record that are relevant to this decision are set forth here. The appellant initially served on active duty in the U.S. Navy from September 1964 through August 1968. R. at 19. In November 1983, the appellant fell from a walkway in a work-related accident, landing on his head. R. at 26, 778-81. He filed a claim for non-service-connected total and permanent disability pension benefits on December 28, 1984. R. at 20-21. That claim was denied in an unappealed rating decision in March 1985, on the basis that he was not precluded from substantially gainful employment by reason of total and permanent disability. R. 29. A reopened claim was denied on the same basis in August 1987 (R. at 37), and, in a March 1988 decision, the Board remanded the matter to a VA regional office (RO) in order to obtain additional medical evidence. R. at 619, 668. In September 1989, while the appellant's claim was on Board remand to the RO (R. at 45, 427), the appellant delivered to VA a February 22, 1989, Social Security Administration (SSA) decision that (1) documented a July 1985 SSA decision granting him a closed period of total disability benefits from November 1, 1983, through May 17, 1985, and (2) determined that he was totally disabled and was entitled to Social Security disability benefits, commencing May 17, 1985 (the end of the previously closed period of disability). R. at 432-33. In a March 1990 decision, the Board denied the appellant's pension claim on the basis that his disabilities, while limiting his ability to engage in some forms of employment, did not preclude substantially gainful employment. R. at 45. The Board had not obtained the appellant's SSA records at that time. R. at 168, 170. In its discussion, however, the Board mentioned the SSA decision, and stated: "We recognize that the veteran has been found entitled to disability benefits from the [SSA], but we are not persuaded that he is permanently and totally disabled within the meaning of [38 U.S.C. 1501, 1521(a) (then sections 501 and 521) and the regulations thereunder]." R. at 45-46.

A motion for Board reconsideration filed in April 1990 was denied in February 1991. R at 60. No appeal was filed to the Court. A VA Form 1-9 (Appeal to the Board of Veterans' Appeals), to which was attached a statement requesting reopening of the non-service-connected pension claim, was received by VA on April 26, 1991. R. at 76. VA received a formal application to reopen the appellant's non-service-connected pension claim in June 1991. R. at 113. An October 1994 RO decision deferred consideration of the claim until the appellant's SSA medical records were

3

received. R. at 168, 170, 185. VA received the SSA records sometime between October and December 1994. R. at 184; Appellant's Brief (Br.) at 13. Subsequently, by an RO decision dated December 21, 1994, the appellant was granted an extraschedular rating of total and permanent disability and granted non-service-connected pension. R at 184. The RO assigned an effective date of June 1991 for the pension award. R. at 9. In making its decision, the RO relied in part on the appellant's newly obtained Social Security medical records. The RO stated:

> [N]umerous evaluations and medical reports since the [appellant's 1983 closed head injury] provided by the [SSA] show veteran suffering from impairments which restrict his capacity to perform basic work activities . . . . Considering the nature of veteran's disability and other factors, such as, the veteran's age, education, limited work skills and occupational background including his long and well-established unemployability and Social Security disability being his only source of income, entitlement to pension is conceded.

R. at 184.

The appellant filed, in September 1995, a Notice of Disagreement (NOD) stating that he "disagree[d] with your effective date of claim for . . . NSC pension . . . ." R. at 736. In the 1997 decision here on appeal, the Board determined that a statement on the April 1991 VA 9 form filed by the appellant was an informal claim pursuant to 38 U.S.C. § 5110(a) and 38 C.F.R. § 3.400(r) (1996), and that he was, accordingly, entitled to an April 1991 effective date for the award of non-service-connected pension benefits. R. at 8-10. The Board found that the appellant presented no legal basis to "negate and ignore the March 1990 final Board decision" and move the effective date back to the date of his original (December 1984) claim or the date of his November 1983 injury. R. at 10.

## II. ANALYSIS

### A. Arguments 1 and 2: Exposure to Agent Orange and Other Toxins, and PTSD Stressors

The Board remanded to the RO for further development the question of the appellant's exposure to Agent Orange and other toxic chemical and biological substances while serving on board the U.S.S. *Granville S. Hall*, and the question of what stressors the appellant experienced during service with respect to his PTSD. R. at 14. This Court's jurisdiction to review Board decisions is limited by statute to review of those Board decisions that are final. *See* 38 U.S.C. §§ 7252(a),

7266(a); *Mayer v. Brown*, 37 F.3d 618, 619 (Fed. Cir. 1994). Claims that have been remanded to the RO by the Board are not ripe for review by this Court. *See Link v. West*, 12 Vet.App. 39, 47 (1998); *Marlow v. West*, 11 Vet.App. 53, 55 (1999); *see also* 38 C.F.R. § 20.1100 (1999) (Board remand not a final decision of the Board). These issues, including the question whether 38 C.F.R. § 3.151(a) (1999) applies to treat the appellant's 1984 pension claim as a claim for compensation pertaining to the remanded matters, cannot be considered by the Court until such time as the Board has rendered a final determination on them. *See Green v. West*, 11 Vet.App. 472, 476 (1998); *Talon v. Derwinski*, 3 Vet.App. 74 (1992).

### B. Argument 3: Error in 1999 Board Decision

The Court has no jurisdiction over the appellant's allegations of error in a 1999 decision of the Board granting total disability due to a service-connected closed head injury. The notice of appeal (NOA) here is limited to the 1997 Board decision; there has been no NOA filed with respect to the 1999 decision. *See* 38 U.S.C. § 7266(a) (Court has jurisdiction to review only Board decisions that are final, and only where an NOA is timely filed); *see also Prenzler v. Derwinski*, 928 F.2d 392, 393-94 (Fed. Cir. 1991) (Court's appellate jurisdiction derives exclusively from statutory grant of authority provided by Congress and may not be extended beyond that permitted by law); *Skinner v. Derwinski*, 1 Vet.App. 2, 3 (1990).

### C. Argument 4: Retroactive Non-Service-Connected Pension Benefits

The appellant asserts that he is entitled to retroactive pension benefits for total disability pursuant to 38 C.F.R. § 3.151 (b) (1999), on the basis that he filed a claim for retroactive benefits within one year of application for pension benefits. A grant of entitlement to retroactive pension benefits is an exception to the rule that the effective date of an award for a grant of a pension is the date from facts found or date of claim, whichever is later. *See* 38 U.S.C. § 5110(a) ("Unless specifically provided otherwise in this chapter, the effective date of an award based on an original claim, a claim reopened after adjudication, or a claim for an increase, of compensation, dependency and indemnity compensation, or pension shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor."); *see also* 38 C.F.R. § 3.400 (1999) ("Except as otherwise provided, the effective date of . . . an award of pension . . . will be the date of receipt of the claim or the date entitlement arose, whichever is the later"). A claimant may not

receive an award of retroactive benefits with an effective date prior to the earlier of one year before the date of the claimant's application for benefits or one year before the date of administrative determination of the entitlement. *See* 38 U.S.C. § 5110(g) ("In no event shall such award or increase be retroactive for more than one year from the date of application therefore or the date of administrative determination of entitlement, whichever is earlier."); *McCay v. Brown*, 9 Vet.App. 183, 188 (1996) ("section 5110(g) was clearly intended to limit maximum amount of recoverable retroactive benefits to one year prior to the filing of an application" (citing *Viglas v. Brown*, 7 Vet.App. 1, 3 (1994))).

A pension award may be effective earlier than the date of receipt of the claim resulting in an award only if: (1) the veteran specifically claims entitlement to retroactive benefits separately or together with the claim for disability pension, and the claim for retroactive benefits is received by VA "within one year from the date on which the veteran became permanently and totally disabled," 38 C.F.R. §§ 3.151(b) (1999) (element 1); *see Wilson v. Brown*, 5 Vet.App. 103, 108 (1993); *Smith v. Derwinski*, 2 Vet.App. 429, 431 (1992); (2) for claims received on or after October 1, 1984, the disability is not the result of the veteran's own willful misconduct (element 2); and (3) the disability is "so incapacitating that it prevented him or her from filing a disability pension claim for at least the first 30 days immediately following the date on which the veteran became permanently and totally disabled," 38 C.F.R. § 3.400(b)(1)(ii)(B) (1999) (element 3); *see Wilson, supra*. The record does not support a conclusion that the willful misconduct element is at issue. However, the appellant has not fulfilled the requirements of either element 1 or element 3.

As to element 1, the appellant filed his first claim for pension in December 1984, and filed applications to reopen through 1991, the last of which resulted in an award by the Board with an effective date of April 1991. The earliest mention of the appellant's desire for retroactive pension benefits is a statement in his appeal of the 1994 RO decision, received by VA on July 3, 1995. *See* R. at 337. The appellant asserts, in effect, (Br. at 23), that he should be deemed to have become permanently disabled for the purpose of the retroactive pension benefit provision as of the December 1994 RO decision granting him non-service-connected pension benefits, thus making the July 1995 request for retroactive benefits timely. However, that 1995 request cannot fall within the requisite one-year period of element 1 as required by § 3.151(b) because VA received it more than four years

6

after the April 1991 effective date for such disability.

As to element 3, there is no evidence that incapacity ever prevented the appellant from filing a pension claim, as required by § 3.400(b)(1)(ii)(B). See R. at 21-27, 37,113. The Court holds, accordingly, that the requirements for retroactive pension benefits under §§ 3.151 and 3.400(b)(1)(ii)(B), both *supra*, have not been met. Finally, as to arguments previously raised by the appellant but implicitly recognized in his brief as unavailing, Br. at 24, neither 38 C.F.R. § 3.201(a) (1999 and earlier versions) (deeming evidence received by the SSA in support of a claim for Social Security old age, survivor, or disability benefits to have been received on the same date by VA) nor the statutory provision it implements, 38 U.S.C. § 5105(b) (deeming a claim for such Social Security benefits to be treated as an application for VA benefits under chapter 13 of title 38 of the United States Code), provides a basis for retroactive pension benefits. These provisions apply, in the event of the death of the veteran, only to a survivor's claim for VA dependency and indemnity compensation. *Cf. Murincsak v. Derwinski*, 2 Vet.App. 363, 369-70 (1992) (§ 3.201(a) and section 5105 have "no application to the merits" of a claim for total disability based on individual unemployability).

### D. Argument 5: CUE Claims

#### 1. CUE in the 1990 Board Decision

The appellant asserts CUE in the March 1990 Board decision on the basis that VA in 1990 failed in its duty to assist him by obtaining a certified copy of his Social Security file, including all medical reports therein. *See* discussion of duty to assist, *infra,* at Part E. The appellant also contends that the 1990 decision contains CUE because it ignored evidence showing that the SSA in February 1989 had granted him total disability benefits and because it also ignored other evidence of unemployability. For the following reasons, the Court rejects the appellant's arguments.

First, a failure of the duty to assist cannot be the basis for a CUE claim. *See Baldwin v. West*, 13 Vet.App. 1, 7 (1999) ("a breach of the duty to assist . . . cannot form the basis of a CUE claim); *Caffrey v. Brown*, 6 Vet.App. 377, 383-84 (1994); *see also Hayre*, 188 F.3d at 1330-32 (ratifying *Caffrey, supra*). Second, the Court's authority to consider claims of CUE in Board decisions is premised upon, inter alia, 38 U.S.C. § 7111, which took effect on November 21, 1997. *See* Pub. L. No. 105-111, 111 Stat. 2271 (1997) (the provisions of Pub. L. 105-111 "apply to any determination

made before, on, or after the date of the enactment."). Section 7111 requires that such arguments must be raised to the Board in the first instance and decided by the Board on the merits; they may not be raised in the first instance on appeal to the Court. *See* 38 U.S.C. § 7111(e); *Ledford v. West*, 136 F.3d 776 (Fed. Cir. 1998) (holding that this Court lacked jurisdiction to hear a CUE claim raised for the first time on appeal). The record shows that the appellant made no CUE claim to the Board in 1997, but argued only that certain medical evidence, among numerous medical reports considered by the Board in 1990, supported his contention that he was unemployable. R. at 1078. The record also shows that the Board made no determination with respect to CUE in its 1990 decision. *See* R. at 1-17.

Third, even were the claim properly before the Court, and even had the record at the time of the 1990 Board decision contained all of the appellant's Social Security records, a claim of CUE would fail in light of evidence also in the record in 1990 indicating that he was not totally disabled, R. at 42-45, 439, 458, 621, 630-31, 650, 653. *See Crippen v. Brown*, 9 Vet.App. 412, 418 (1996) (CUE is present only where there is an error that is "undebatable, so that it can be said that reasonable minds could only conclude that the original decision was fatally flawed."); *Eddy v. Brown*, 9 Vet.App. 52, 57 (1996) (more than an assertion of a disagreement as to how the facts were weighed or evaluated is required to raise a valid claim of CUE)*; Fugo v. Brown*, 6 Vet.App. 40, 43-44 (1994) ("even where the premise of error is accepted, if it is not absolutely clear that a different result would have ensued, the error complained of cannot be, ipso facto, clear and unmistakable"); *see also Russell v. Principi,* 3 Vet.App. 310, 313 (1992) (en banc); 64 Fed. Reg. 2135-36 (1999); 38 C.F.R §§ 20.1400 - 20.1410 (1999).

### 2. Other CUE Claims

The appellant asserts clear error in both the 1994 RO decision and the March 1997 Board decision (considering the 1994 RO decision on appeal) on the basis that they also should have taken into consideration the 1989 SSA award of total disability (granting an effective date for some Social Security purposes in 1983) and have thus assigned an effective date for permanent and total disability for VA pension purposes as of the December 1984 date of his original claim. Br. at 10. The Court understands this argument as alleging CUE in both decisions. For the following reasons, the Court rejects these arguments.

8

First, as to a claim of CUE in the 1994 RO decision, a CUE claim would be "a collateral attack on a final RO decision." *See Donovan v. Gober*, 10 Vet.App. 404, 407 (1997), *aff'd sub nom. Donovan v. West*, 158 F.3d 1377 (Fed. Cir. 1998), *cert. denied*, 119 S.Ct. 1255 (1999); *Phillips v. Brown*, 10 Vet.App. 25, 31 (1997); *see also* 38 U.S.C. § 5109A (providing for CUE claims as to prior, final, RO decisions). Where, as here, an RO decision is appealed directly to the Board, it does not become final. *See* 38 U.S.C. § 7105(c) (RO decision is rendered nonfinal by timely appeal to Board). Accordingly, the appellant may not bring a CUE claim as to the nonfinal 1994 RO decision. *See Link*, 12 Vet.App. at 45 (RO decisions rendered nonfinal by timely appeal to the Board are not, as a matter of law, subject to CUE claims); *Best v. Brown*, 10 Vet.App. 322, 325 (1997) (appellant cannot raise CUE with respect to rating decision that is not final).

Second, as to CUE in the 1997 Board decision on appeal here, section 7111, as discussed above, does not allow review of a claim for CUE in a Board decision unless such claim has first been submitted directly to the Board for consideration. *See Ledford, supra; Carpenter v. Gober*, 11 Vet.App. 140, 144 (1998) ("the new section 7111 does not on its face apply unless the claimant has already submitted to VA a claim of CUE"). This claim has impermissibly been made for the first time on appeal to the Court. Third, a claim of CUE applies to a Board decision that is on direct appeal to the Court. Although the Court may consider a collateral attack on a determination made by the Board as to CUE in a prior Board decision, as a matter of law there can be no CUE as to the Board decision directly on appeal. *See* 38 U.S.C. § 7111(a) ("If evidence establishes [CUE], the *prior* decision shall be reversed or revised.") (emphasis added); *see also Carpenter, supra* (section 7111 applies only where a claim of CUE "in a prior BVA decision" has been submitted to VA).

### E. Argument 6: Duty to Assist

The appellant specifically argued to the Board in a January 1997 written presentation that VA failed in its duty to assist him by obtaining his SSA records after receiving a copy of the SSA decision in 1989, and that the SSA records consequently were not before the Board when it made its 1990 decision. R. at 1078. The Board in the decision on appeal did not specifically address that question, but has, rather, stated only that the "appellant has presented no legal basis for" negating the 1990 decision, and that the 1990 decision was "nevertheless final, cutting off the pension claims which predate it." *See* R. at 10. The first question the Court must decide is whether it has

jurisdiction to consider this issue. An RO decision, which is not of record but referenced by the Board (R. at 9), and which necessarily would have been made in or after the December 1994 RO decision, awarded the appellant non-service-connected pension and assigned an effective date of June 1991 for the pension award. The appellant filed an NOD in September 1995, specifically contesting for the first time the effective date of the pension award. R. at 736. The U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has stated that the issue of effective date can give rise to its own NOD. In *Barrera v. Gober*, 122 F.3d 1030, 1032 (Fed. Cir. 1997), the Federal Circuit considered two NODs, one pertaining to the rating of a disability and one pertaining to the effective date of that rating, and held that multiple NODs may be filed with respect to multiple issues concerning one claim. *See also Grantham v. Brown*, 114 F.3d 1156, 1158-59 (Fed. Cir. 1997) (separate NODs confer jurisdiction as to separate elements of a claim, e.g., service connection and rating of disability); *Hanson v. Brown*, 9 Vet.App. 29, 31 (1996). The appellant's NOD was filed (1) within the requisite one-year period for filing, set forth in 38 U.S.C. § 7105(b)(1) ("[NOD] shall be filed within one year from the date of mailing of notice of the result of initial review or determination"), and (2) on or after November 18, 1988, *see Buckley v. West*, 12 Vet.App. 76, 81-82 (1998) ("Court has jurisdiction to review only those final BVA decisions prior to which an NOD was filed on or after November 18, 1988, as to an underlying decision of an RO or other agency of original jurisdiction") (citing Veterans' Judicial Review Act (VJRA), Pub. L. No. 100-687, § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C.§ 7251 note)). *Grantham*, 114 F.3d at 1158-59 (separate NODs confer jurisdiction as to separate elements of a claim, e.g., service connection and rating of disability). Accordingly, the Court clearly has jurisdiction over this issue.

The Court next notes that, because the appellant served for a period of 90 days or more during a period of war, and there was medical evidence of total disability and evidence that he met the requisite income standard before the Board at the time of its 1990 decision, the appellant's claim for non-service-connected pension was then well grounded. R. at 19, 33-34, 43-45, 365. S*ee* 38 U.S.C. § 1521(a); *Vargas-Gonzalez v. West*, 12 Vet.App. 321, 328 (1999).

Consequently, under current law, VA had a duty to assist the appellant in developing the facts pertinent to his well-grounded pension claim, including obtaining all relevant SSA records regarding his disability and employability. *See* 38 U.S.C. § 5107(a); *Voerth v. West*, 13 Vet.App. 117, 121

(1999) (included in the section 5107(a) duty to assist "is the responsibility of VA to obtain any relevant records from the [SSA]."); *Baker v. West*, 11 Vet.App. 163, 169 (1998) (when VA put on notice of SSA records prior to issuance of a final decision, the Board must seek to obtain the records); *Murincsak*, 2 Vet.App. at 370 (under section 5107(a), VA has a statutory duty to acquire both the SSA decision and the supporting medical records pertinent to a claim); *Masors v. Derwinski*, 2 Vet.App. 181, 188 (1992) (where VA has SSA decisions determining disability and unemployability for SSA purposes, VA is required to obtain SSA records relating to those decisions). The question now becomes whether the Board's failure to fulfill its duty to assist in 1990 kept open the claim then before it, thus possibly allowing for the award of an earlier effective date for the non-service-connected pension benefit.

There are currently two statutorily authorized means to obtain reevaluation of a final VA benefits decision. A final decision disallowing a claim may be revised based upon a showing of clear and unmistakable error in a prior decision by the Secretary or the Board pursuant to 38 U.S.C. §§ 5109A and 7111, or reopened based upon submission of new and material evidence pursuant to 38 U.S.C. § 5108. In *Hayre,* the U.S. Court of Appeals for the Federal Circuit created a nonstatutory means to obtain review of a previously denied claim. That court held that a breach of the duty to assist is not the type of error that can provide the basis for a CUE claim in accordance with this Court's case law. *Hayre*, 188 F.3d at 1333-34; *see Baldwin*, 13 Vet.App. at 7; *Caffrey*, 6 Vet.App. at 383-84. However, the Federal Circuit went on to hold that "[i]n cases of grave procedural error . . . RO or Board decisions are not final for purposes of direct appeal." *Hayre*, 188 F.3d at 1333. (Citing as examples of cases involving grave procedural error: *Tablazon v. Brown*, 8 Vet.App. 359, 361(1995); *Hauck v. Brown*, 6 Vet.App. 518, 519 (1994); *Kuo v. Derwinski*, 2 Vet.App. 662, 666 (1992); *Ashley v. Derwinski*, 2 Vet.App. 307, 311 (1992)). "A breach of the duty to assist in which the VA failed to obtain pertinent SMRs specifically requested by the claimant and failed to provide the claimant with notice explaining the deficiency is a procedural error of, at least, comparable gravity that vitiates the finality of an RO decision for purposes of direct appeal." *Id.* This Court has recently held, in *Simmons v. West,* that *Hayre* does not require the tolling of the underlying final RO decision for a "garden variety" breach of VA's duty to assist. *Simmons v. West*, 13 Vet.App. 501, 509 (2000), *reconsidered*, __Vet.App.__, slip op. at 9 (August 30, 2000). The

11

Court in *Simmons* noted that:

> Not only do we believe that *Hayre* does not **require** that a "garden variety" breach of VA's duty to assist, in the development of a claim that is well grounded, be construed as tolling the finality of an underlying RO decision, but we also believe that it would be unwise for this Court to extend *Hayre* to encompass such a duty-to-assist violation. At some point, there is a need for finality within the VA claims adjudication process; thus, the tolling of finality should be reserved for instances of "grave procedural error"--error that may deprive a claimant of a fair opportunity to obtain entitlements provided for by law and regulation.

*Id.* (Emphasis in original.)

The Secretary argues persuasively that, at the time of the 1990 decision, the scope of the Secretary's duty to assist concerning the procurement of SSA records was not clearly defined. Secretary's Motion for Reconsideration at 6-8. In contrast to the situation in *Hayre,* where there was a specific *VA Adjudication Procedure Manual M21-1* provision prescribing the steps to be taken to obtain SMRs, in this case there were no analogous *M21-1* provisions requiring the procurement of SSA records in 1990. The dissent asserts that in 1990 the Board was under a statutorily prescribed duty pursuant to 38 U.S.C. §§ 5106, 5107 (sections 3006 and 3007 in 1990) to obtain the appellant's SSA records. Section 5107(a) requires that "The Secretary shall assist such a claimant in developing the facts pertinent to the claim. Such assistance shall include requesting **information** as described in section 5106 of this title." (Emphasis added). Section 5106 provides, "The head of any Federal department or agency shall provide such **information** to the Secretary as the Secretary may request for purposes of determining eligibility for or amount of benefits, or verifying other **information** with respect thereto." (Emphasis added). (In 1990 both sections 3006 and 3007 were identical in substance to the currently renumbered sections 5106 and 5107, with the exception that the term "Administrator" was used in place of the current term "Secretary"). The dissent argues that in 1990 the Board had a clear duty under sections 3006 and 3007 (currently 5106 and 5107) to obtain the appellant's SSA records, making any future Court precedent or *Manual 21-1* provisions irrelevant regarding its duty to obtain those SSA records.

The plain language of sections 3006 and 3007 **clearly** indicates that the Secretary's duty is to request **information** from other federal agencies, not **records.** That was the state of the law in 1990. While the Board never directly requested information from the SSA, it utilized the necessary

12

*information* contained in the February 1989 SSA decision in making its 1990 decision. Additionally, Dr. Simpson, whose medical opinion was relied upon in the 1989 SSA decision, testified at the appellant's Board hearing. The Board clearly received *information* in satisfaction of the applicable law in 1990. Therefore, even under the dissent's position, the Board, in 1990, fulfilled its statutory duty.

The Court's case law rendered after the Board issued its decision recognized the scope of the Secretary's duty to assist to include the obligation to request relevant SSA records as discussed *supra*. In light of the fact that the Secretary's duty to assist was not well defined at the time of the decision in 1990, the Court believes that it would be unfair, with the benefit of hindsight and the knowledge of subsequent case law, to conclude that the Board, under the duty to assist, would have been required to request the SSA records. The Secretary correctly asserts that it did not become clear that the Secretary's duty to assist required requesting the specific records relied upon by the SSA until after there was judicial review of VA's procedures.

Under *Simmons*, not every breach of the duty to assist constitutes error sufficient to vitiate a final decision. In this case, the record reflects that, while the Board had not obtained the appellant's SSA records at the time it made its March 1990 decision (R. at 41-46), the Board did take the SSA decision into consideration when makings its decision. The appellant was aware of the existence of his SSA file and submitted the favorable February 1989 SSA decision to VA. R. at 45, 1328, 34. Both the SSA and the Board decision discuss the September 1987 EEG results and reports and testing conducted by Dr. Simpson and Dr. Jutsky. R. at 42-44, 1332-33. Dr. Simpson, whose report the SSA relied upon, testified at the veteran's Board hearing. R. at 41, 43. Although the Board did not specifically request the SSA records as would be required under current case law and procedures, the veteran did receive the benefit of having the Board consider his SSA decision and underlying medical evidence as part of its decision making process. In light of the fact that *Hayre* is a judicially created departure from statutorily mandated rules governing the finality of VA decisions, *Hayre* should not be read broadly as a basis for disregarding finality in situations not involving "grave procedural error." *Simmons* instructs that such error must be of the kind that "may deprive a claimant of a fair opportunity to obtain entitlements provided for by law and regulation." *Simmons*, 13 Vet.App. at 509, *reconsidered*, __Vet.App.__, slip op. at 9. The Board's failure to procure the

13

SSA records at the time of the March 1990 decision was not an error of such magnitude that it deprived the appellant of a fair opportunity to obtain a benefit provided by law. The Court holds that, because there was a dearth of clear authority to guide the Board in 1990 concerning the procurement of SSA records, the Board's failure to obtain the SSA records, while it would currently constitute a breach of the duty to assist, did not give rise to a grave procedural error comparable to that in *Hayre.*

### III. CONCLUSION

Any appeal with respect to the appellant's arguments 1, 2, 3, and 5, discussed in Parts II.A., B., and D. above, is DISMISSED. The decision of the Board is otherwise AFFIRMED.


KRAMER, *Judge*, concurring in part and dissenting in part: As the author of the opinion in this case that was withdrawn, I happily concur with Parts II.A, B., C., and D., of the majority opinion. However, I cannot agree with the majority's approach and conclusion in Part II.E., and I dissent to that extent.

As a preliminary matter, I note that I share the majority's concern regarding the possible implications of a broad reading of the decision of the United States Court of Appeals for the Federal Circuit (Federal Circuit) in *Hayre v. West*, 188 F.3d 1327, 1332-35 (Fed. Cir. 1999), including, absent statutory authority, the vitiation of the finality of a VA decision. *See id.* at 1333 (VA's breach of duty to assist by failing to obtain specifically requested service medical records (SMRs), and failing to so notify claimant, is "grave procedural error" justifying holding otherwise final VA decision open); *see also* 38 U.S.C. § 5107(a) (VA has duty to assist in development of well-grounded claim). That said, there is no question that *Hayre* is binding precedent, and there is no question that the appellant here submitted a well-grounded non-service-connected pension claim. Consequently, VA had a duty to assist in the development of that claim that included, in the majority's words, "obtaining all relevant S[ocial] S[ecurity] A[dministration (SSA)] records regarding his disability and employability," *ante* at ___, slip op. at 11, and that the Board breached that duty when it failed to seek and obtain SSA medical records after receipt of an SSA decision determining that, as of May 1985, the appellant was totally disabled and unable to undertake any employment. Record (R.) at 45,

14

168, 170, 432-33; *see Voerth v. West*, 13 Vet.App. 117, 121 (1999); *Baker v. West*, 11 Vet.App. 163, 169 (1998); *Murincsak v. Derwinski*, 2 Vet.App. 363, 370 (1992). Nevertheless, the majority, relying on the Court's decision in *Simmons v. West*, 13 Vet.App. 501 (2000), *reconsidered*, ___ Vet.App. ___ (August 30, 2000), has created a construct whereby a breach of the duty to assist in each case must of necessity be measured by its degree of importance. For the following reasons, the majority's analysis is flawed.

First, VA's duty to assist in the development of a claim attaches only where a claimant first has submitted a well-grounded claim. *See* 38 U.S.C. § 5107(a); *Epps v. Gober*, 126 F.3d 1464, 1469 (Fed. Cir. 1997). Although a well-grounded claim is a "plausible" claim, that is, a claim that is meritorious on its own or capable of being substantiated, *Murphy v. Derwinski,* 1 Vet. App. 78, 81 (1990), a claim that is well grounded does not necessarily warrant an award of veterans' benefits (but a claim that warrants benefits is always well grounded). *See, e.g., Vargas-Gonzalez v. West*, 12 Vet.App. 321, 328 (1999) (discussing evidence necessary to establish entitlement to non-service-connected pension); *see also Rose v. West*, 11 Vet.App. 169, 171 (1998) (evidence necessary to establish service connection); *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995) (same), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table). Thus, within the "manifestly pro-claimant" VA benefits system, *Hayre*, 188 F.3d at 1333, the purpose of the duty to assist is for VA to undertake the necessary evidentiary development to, in essence, determine if the quantum of evidence can be raised from that sufficient to well ground a claim to that sufficient to bring the evidence into equipoise. *See* 38 U.S.C. § 5107(b) (where approximate balance of positive and negative evidence exists regarding material issue, benefit-of-doubt in resolving such issue given to claimant); *Hayes v. Brown*, 5 Vet.App. 60, 69-70 (1993) (benefit of doubt doctrine applicable where evidence is in "equipoise"); *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990) (same). In other words, the purpose of the duty to assist*,* with respect to *each and every* well-grounded claim, is for VA to obtain the evidence necessary to determine whether an award of benefits is warranted. In such a scheme, there can be no "major" or "minor" violation of the duty to assist; every action taken pursuant to that duty is to obtain the missing quantum of evidence that may make the difference in an award of benefits.

Second, the majority bases its differentiation between major and minor breaches of the duty to assist on the Court's statement in *Simmons* that "*Hayre* does not **require** that a 'garden variety'

15

breach of VA's duty to assist . . . be construed as tolling the finality of an underlying RO decision". *Simmons*, 13 Vet.App. at 508 (emphasis in original)*, reconsidered*, ___ Vet.App. ___, slip op. at 9. The majority fails to acknowledge, however, that such language was mere dictum, and that the Court in *Simmons* nevertheless also concluded that the appellant there "ha[d] not shown that an extant and applicable VA duty to assist was violated" and that "such a failing" was "fatal to the *Hayre* relief [sought]." Simmons, 13 Vet.App. at 507, *reconsidered*, ___ Vet.App. ___, slip op. at 8. Moreover, the *Simmons* Court, in essence, distinguished between a case involving potential evidence that the claimant easily would be able to obtain on his or her own, such as where "the veteran could readily have obtained a medical examination from a private physician and submitted the results," and a case involving already-existing evidence in the possession of VA ("VA was in control of evidence necessary to prove [the] claim"), and concluded that the latter situation would represent a "grave procedural error." *Simmons*, 13 Vet.App. at 508*, reconsidered*, ___ Vet.App. ___, slip op. at 9 (citing Veterans Benefits Administration Letter 20-99-60 at 1 (Aug. 30, 1999) (deeming SMRs and VA medical center records to be in VA custody)). Although what is involved in this case is SSA, rather than VA, records, it is clear that VA knew that such records existed and were in the possession of the Federal government. Clearly, then, the case before us is much more analogous to the latter, i.e., a "grave procedural error," than to the former, i.e., a "garden variety breach," as described in *Simmons*.

Third, despite the Board's acknowledged breach of the duty to assist here, the majority declines to hold open the 1990 Board decision on the basis that, at the time of that decision, the law pertaining to VA's duty to assist by obtaining SSA records "was not clearly defined." *Ante at* ___, slip op. at 12. By this, the majority apparently means that at the time of the 1990 Board decision there was no *VA Adjudication Procedure Manual M21-1* (*Manual M21-1*) provision, or other internal VA issuance, extant that required VA to undertake the action that it failed to do (i.e., to obtain SSA records after receiving notice of an SSA decision awarding the appellant benefits on the basis of total unemployability), and that the Court's caselaw holding to that effect had not yet been issued. *Ante* at ___, slip op. at 12*; see Hayre*, 188 F.3d at 1331-32 (discussing *VA Adjudication Procedure Manual M21-1*, Part VI, Para. 6.04(b), requiring VA to make supplemental request for SMRs when initial request results in obtaining only partial records); *see also Masors v. Derwinski*,

2 Vet.App. 181, 188 (1992) (VA failure to obtain SSA records after receipt of SSA decision determining unemployability is breach of duty to assist). However, the majority ignores that, at the time of the 1990 Board decision, Congress had mandated that VA's duty to assist a well-grounded claimant "shall include requesting information as described in section 3006 of this title." 38 U.S.C. § 3007(a) (1988) ( recodified in 1991 as 38 U.S.C. § 5107(a) by Pub. L. No. 102-40, § 402(b)(1), (d)(1), 105 Stat. 238, 239). Former section 3006 provided that "[t]he head of any Federal department or agency shall provide such information to [VA] as [VA] may request for purposes of determining eligibility for or amount of benefits or verifying other information with respect thereto." 38 U.S.C. § 3006 (1988) (recodified in 1991 as 38 U.S.C. § 5106 by Pub. L. No. 102-40, § 402(b)(1), 105 Stat. 238).

Thus, in the present case, at the time of its 1990 decision, the Board's duty to obtain the appellant's SSA records, which were certainly highly pertinent to the his pension claim, was explicitly outlined by statute. *See generally Hayre*, 188 F.3d at 1331 (recognizing that "[r]easonable efforts by the VA to obtain records regarding medical history from other Federal departments or agencies are an important part of the VA's affirmative duties under [former section 3007(a) and] 38 U.S.C. § 5107(a)"); *Masors*, 2 Vet.App. at 187-88. The fact that VA had not seen fit to set forth that duty in a *Manual M21-1* provision and that the Court had not yet specifically so held, therefore, is irrelevant. Contrary to the majority's view, *ante* at ___, slip op. at 12, in light of such a statutorily prescribed obligation, the Secretary's argument that "at the time of the 1990 decision, the scope of the Secretary's duty to assist concerning the procurement of SSA records was not clearly defined," should be rejected. Indeed, given the statutory requirement, the majority's characterization of this argument as "persuasive," and its determination that it therefore would be "unfair to conclude that the Board, under the duty to assist, should have requested the records relied upon by the [SSA]," *id.,* simply is inexplicable. In sum, I believe there was no ambiguity as to the Board's duty in 1990 to seek and obtain the appellant's SSA records.

Fourth, even assuming that there was such an ambiguity, however, and that the two-tiered approach to breaches of the duty to assist adopted by the majority and by the panel in *Simmons* is appropriate, such that in order to hold an otherwise final decision open under *Hayre*, it must first be determined whether a breach of a duty to assist "'may deprive a claimant of a fair opportunity to

17

obtain entitlements provided for by law and regulation,'" *ante* at ___, slip op. at 13 (quoting *Simmons*, 13 Vet.App. at 508, *reconsidered* ___ Vet.App. ___, slip op. at 9), the majority's evaluation as to why there has been no such deprivation here is problematic. Without further analysis, the majority simply seems to conclude that the "dearth of clear authority to guide the Board in 1990 concerning the procurement of SSA records" equates to no "depriv[ation] of a fair opportunity." *Ante* at ___, slip op. at 13. However, the two concepts are not equatable. The former goes to the clarity of the requirement; the latter goes to the impact on the appellant of not meeting the requirement. In other words, the former is procedural and the latter is substantive. Can there be any doubt that the failure to undertake even a "vague" procedural requirement can nevertheless "deprive a claimant of a fair opportunity" and thus result in substantial adverse impact to a claimant? Moreover, in the present case, it is clear from the record that the Board's failure to obtain the appellant's SSA medical records in 1990 deprived the appellant of the opportunity to obtain pension benefits at that time and resulted in the almost 5-year delay in the award to the appellant of pension benefits. Under the majority's own statement of facts, the Board in 1990, although it acknowledged the appellant's SSA award decision, essentially ignored the existence of the appellant's SSA medical records and their pertinence to the question of his unemployability. Without the benefit of having all of that evidence before it, the Board stated: "We recognize that the [appellant] has been found entitled to disability benefits from the [SSA], but we are not persuaded that he is permanently and totally disabled within the meaning" of the laws governing veterans' benefits. R. at 45-46. Subsequently, however, when the appellant attempted to reopen his pension claim, the RO recognized that VA should have obtained the appellant's complete SSA medical records, and declined to make a decision on the claim to reopen until it had obtained the records from SSA. R. at 168, 170, 185. Upon receipt of the SSA records, the RO awarded pension entitlement in December 1994, stating: "[N]umerous evaluations and medical reports . . . provided by the [SSA] show [the appellant] suffering from impairments which restrict his capacity to perform basic work activities. . . . [C]onsidering . . . his long and well-established unemployability and Social Security disability being his only source of income, entitlement to pension is conceded." R. at 184. From such a record, it is obvious that, despite the fact that the Board in 1990 had before it some of the same evidence that was before SSA when it made its determination of unemployability, *see ante*

18

at ___, slip op. at 12, the sum of the evidence contained in the appellant's SSA medical records, finally obtained by VA in 1994, tipped the balance and resulted in the award of pension benefits. Thus, contrary to the majority's conclusion that the appellant was not deprived of a fair opportunity to obtain a benefit, *see ante* at ___, slip op. at 13, the deprivation of more than 4 years of pension benefits clearly rests upon the Board's breach of its duty to assist in 1990.

Fifth, the facts of this case fit squarely into the scenario contemplated by the Federal Circuit in *Hayre* as requiring the vitiation of the finality of a VA decision. In *Hayre*, an RO made a single request to the National Personnel Records Center for SMRs pertaining to the veteran's claim for a nervous condition, about which it had been informed by the veteran. Although the RO did not obtain the SMRs, prior to denying the claim it neither informed the veteran that it did not obtain them, suggested that the veteran obtain them himself, nor suggested the submission of alternative evidence. That decision was not appealed and became final. *See Hayre*, 188 F.3d at 1329, 1332. The veteran subsequently was awarded service connection for post-traumatic stress disorder (PTSD), which decision he appealed on the basis that the RO denial contained clear and unmistakable error (CUE) and that he was entitled to an effective date based upon his original, denied claim for a nervous condition. *Id.* at 1329-30. The Federal Circuit cited sections 5107 and 5106, formerly sections 3007 and 3006 (as discussed above), in holding that VA's duty to assist in the development of a claim included the making of more than a single, unfulfilled, request for SMRs (i.e., records in the hands of another Federal agency) and also included an obligation to notify a claimant of its failure to obtain such records and give the claimant the opportunity "to independently attempt to obtain the [records, or] to submit alternative evidence" prior to making a determination. *Id.* at 1332; *see also Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991) (duty to assist requires VA either to "obtain the records before deciding the case or to explain[ the] failure to do so"); VA's Adjudication Procedure Manual M21-1, Part VI, Para. 6.04(b), *supra.* That court then concluded that a breach of such duties to assist amounted to a "grave procedural error . . . that vitiates the finality" of the underlying agency decision. *Hayre*, 188 F.3d at 1333. Finally, the *Hayre* court held that no remedy would be available through the veteran's CUE claim "because Mr. Hayre cannot prove that the missing SMRs would manifestly change the outcome of the 1972 rating decision." *Id.*; *see, e.g., Baldwin v. West*, 13 Vet.App. 1, 7 (1999) (breach of duty to assist cannot form basis of collateral attack on final decision through claim

of CUE); *see also* 38 U.S.C. § 7111(e) (claims of CUE in final Board decision must be raised in first instance to Board).

Here, as in *Hayre*, the Board clearly breached its duty to assist the appellant when it failed to seek and obtain pertinent records in the hands of another Federal agency, the existence of which it was aware, failed to notify the appellant that it had not obtained them, and failed to notify him that he could independently obtain them or submit alternative evidence, all prior to denying his claim. (To the extent that the majority attempts to limit the reach of section 5106 (formerly section 3006) to "information," as contrasted with "records," I note that the former encompasses more than the latter, which is a specific type of the former. *See* WEBSTER'S NEW WORLD DICTIONARY 693 (3d Coll. Ed. 1988) [hereinafter WEBSTER'S] (information is, inter alia, "knowledge acquired in any manner; facts; data; learning; lore. . . a person or agency answering questions as a service to others"); WEBSTER'S at 1122 (a record is, inter alia, "anything that is written down and preserved as evidence; [an] account of events; . . . the known or recorded facts about anyone or anything"). Moreover, to suggest that the records in question do not constitute "information as described in section 5106," "for purposes of determining eligibility for or amount of benefits," *ante*, slip op. at 12 (quoting section 5107(a) and section 5106, respectively), simply "won't play in Peoria.") In addition, also as in *Hayre*, the appellant had no possible CUE remedy for the breach. (I note that, in its 1997 decision, the Board stated that the appellant presented no legal basis "to negate and ignore the March 1990 final Board decision." R. at 10.) Finally, although I acknowledge that the veteran in *Hayre* had asked for VA assistance in obtaining his SMRs prior to the RO making the denial, and that the appellant here had not, such distinction is without effect. As succinctly stated by the Federal Circuit, "[i]f a veteran, who is *later* able to obtain counsel or serendipitously *discovers* a breach of the duty to assist, has no remedy, then the duty to assist becomes a hollow obligation." *Hayre*, 188 F.3d at 1334 (emphasis added). Therefore, the finality of the 1990 Board decision should be held to be vitiated under *Hayre*, and the matter remanded for further adjudication. *See Simmons*, 13 Vet.App. at 508, *reconsidered* ___ Vet.App. ___, slip op. at 9.

Consequently, I am unable to agree with the majority's reasoning or conclusion with respect to Part II.E., and I therefore respectfully dissent to that extent.